IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACOB R.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

Case No. 3:24-cv-01675-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Jacob R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381–1383f. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in December 1985, plaintiff alleges disability beginning January 5, 2019, due to mental conditions, borderline schizophrenia, severe anxiety, and back pain. Tr. 15, 35-36, 197. His application was denied initially and upon reconsideration. On June 12, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 31-44. On July 1, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 26. After the Appeals Council denied his request for review, plaintiff filed a complaint in this court. Tr. 1.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease, lumbar spinal stenosis, schizophrenia spectrum disorder, panic disorder, and history of substance abuse disorder." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because the ALJ did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except:

> [C]laimant can stand and walk for 6 hours and can sit for 6 hours; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and can have occasional exposure to hazards. The claimant can understand, remember, and carry out simple instructions, and can use judgement to make simple work related decisions. The claimant can deal with occasional changes in a routine work setting. The claimant

---

[2] The record before the Court is approximately 700 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

      can occasionally interact with supervisors, and coworkers, and can have no interaction with the public.

Tr. 19.

At step four, the ALJ determined plaintiff is unable to perform his past relevant work. Tr. 24. At step five, the ALJ concluded, based on the VE's testimony, there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as production assembler, marker, and routing clerk. Tr. 25.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly discounting the medical opinion of consultative examiner Jessica Bentura-Jimenez, PMHNP. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[3] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods*, 32 F.4th at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other

---

[3] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Page 3 – OPINION AND ORDER

medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Kevin R. H.*, 2021 WL 4330860 at *4. At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

Ms. Bentura-Jimenez, PMHNP, met plaintiff for a psychiatric consultative exam on July 9, 2023. Tr. 391. At the appointment, plaintiff informed Ms. Bentura-Jimenez of his schizophrenia diagnosis and described his symptoms of a schizophrenic episode such as perceiving himself to be in a higher work position than he is, hearing things, people not understanding him, and other "perceptual cognitive abnormalities." Tr. 391-92. Ms. Bentura-Jimenez continued the examination and asked plaintiff about his drug and alcohol use, psychiatric history, medical history, family psychiatric history, social history, legal history, and military history. Tr. 392-93. Plaintiff denied any drug and alcohol use other than one to two beers a week, denied any suicide or self-harm attempts, denied any trauma growing up, and described himself as "kind of homeless." Tr. 392. Ms. Bentura-Jimenez then asked plaintiff about his social functioning, education, concentration, and activities of daily living. Tr. 393. Plaintiff testified to be a social person who enjoys spending time with family and reading at the library. *Id.* Regarding concentration, he stated: "I have to reread things a couple of times to remember the info." *Id.*

After completing this portion of the consultative examination, Ms. Bentura-Jimenez conducted a Mental Status Exam on plaintiff. Tr. 393-95. Ms. Bentura-Jimenez described plaintiff as friendly and cooperative with good insight, good attention and concentration, linear and goal directed thought process, and unremarkable thought content and perceptions. Tr. 393-94. Plaintiff

correctly answered questions testing his orientation, memory, and fund of knowledge. Tr. 394. As part of the examination testing fund of knowledge, plaintiff correctly answered math word problems testing his ability to make simple calculations. *Id.* When tested on concentration, plaintiff successfully followed a three-step command and successfully counted backwards from 100 by three. Tr. 394-95. Plaintiff failed to successfully count backwards from 100 by seven. Tr. 395.

Ms. Bentura-Jimenez diagnosed plaintiff with schizophrenia and gave him a "[f]air" prognosis if he were to receive optimal treatment over the next 12 months. Tr. 395. She assessed plaintiff as able to manage funds, adapt to the usual stresses of a workplace, and interact with coworkers, superiors, and the public. Tr. 395-96. She assessed plaintiff as unable to "understand, remember, and carry out simple instructions," "understand, remember, and carry out complex instructions," and "sustain concentration and persist in work-related activity at a reasonable pace, including regular attendance at work and completing work without interruption." *Id.*

After summarizing Ms. Bentura-Jimenez's consultative examination and her assessment of plaintiff, the ALJ found her opinion not persuasive. Tr. 23. The ALJ articulated, "her statement that the claimant could not deal with even simple tasks lacks support" because it was inconsistent with the findings of her consultative examination of plaintiff. *Id.* The ALJ explained how this extreme limitation was inconsistent with her findings that plaintiff was able to follow a three-step command, perform calculations other than counting backwards from 100 by seven, and his mental status exam documenting "normal speech, mood, thoughts, perceptions, attention, concentration, insight, orientation, and memory." Tr. 23, 393-95.

Next, the ALJ found the limitation on plaintiff's concentration and persistence inconsistent with Ms. Bentura-Jimenez's examination – for the same reasons explained above – and inconsistent with the medical record citing to a "normal clinical mental status exam" from March

Page 5 – OPINION AND ORDER

20, 2024. Tr. 23, 395, 492. At the clinical exam referred to by the ALJ, plaintiff stated, "things are going well" and the clinician recorded plaintiff "[f]eels less forgetful, less depressed, less paranoia" following a dosage increase of paliperidone, plaintiff's psychiatric medication. Tr. 492. The clinician assessed plaintiff to have a normal and "well kempt" appearance, a logical and goal directed thought process, and intact insight, judgment, memory, attention, and fund of knowledge. Tr. 492.

Finally, the ALJ added limitations to plaintiff's interactions with others and changes in work setting because they found Ms. Bentura-Jimenez's opinion inconsistent with the record. While Ms. Bentura-Jimenez observed plaintiff to be friendly, cooperative, and stable during the exam, and therefore assessed no limitations to plaintiff's ability to interact with others and adapt to changes in work setting, the ALJ found this assessment inconsistent with plaintiff's "history of substance abuse and delusions." Tr. 23, 391-96, 424-25, 523-25.

Plaintiff argues the ALJ improperly substituted their own interpretation of medical evidence while assessing Ms. Bentura-Jimenez's s medical opinion and failed to provide a reason supported by substantial evidence for discounting Ms. Bentura-Jimenez's opinion. Pl. Br. at 6. Plaintiff also argues the ALJ erred by not articulating Ms. Bentura-Jimenez's expertise in the social security program's policies and evidentiary requirements. Pl. Br. at 5.

It is the ALJ's duty, not this Court's, to resolve ambiguities in the medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); "The ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Furthermore, while the ALJ is required to articulate how

Page 6 – OPINION AND ORDER

they considered the supportability and consistency factors in assessing a medical opinion, ALJs are not required, as plaintiff argues, to articulate how they considered secondary factors such as the medical provider's familiarity with the disability program. "We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b)(2); *see also Woods*, 32 F.4th at 792.

Because the ALJ's assessment of Ms. Bentura-Jimenez's opinion was reasonable and supported by substantial evidence, it is affirmed. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("Where the evidence can reasonably support either affirming or reversing a decision, we [the court] must not substitute our judgment for that of the ALJ." (citation and internal quotation and brackets omitted)).

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 23rd day of July, 2025.

                    /s/ Jolie A. Russo
                       Jolie A. Russo
               United States Magistrate Judge